Good morning, Your Honors. Ken Hamilton representing Lazaro Mendoza, Inez Mendoza, and Jonathan Mendoza. Oh, initially, I'd like to request that I could reserve one minute for rebuttal, please. The first thing I want to do is address the opinion of Lopez-Urrenda, 345 F. 3rd, 788. The clerk of the court requested that I argue this case. Okay. The first thing I'd like to do is argue the case of Lopez-Urrenda v. Ashcroft, 345 F. 3rd, 788. In Lopez-Urrenda, the petitioners were not eligible for suspension of deportation when they contacted and surrendered to the INS, because at the time that they contacted and surrendered to the INS, they had not been in the country for the seven-year period which is required under the old suspension of deportation rules. Doesn't that pretty well determine this case? No, it doesn't, because in this case, the petitioners were all eligible for suspension of deportation when they contacted the service and surrendered to the service. Well, your position would have to be then that if the petitioners are eligible for some relief under the old law and turn themselves in, and we're seeking that relief, but nothing was done, they're entitled to that relief under the old law. That's what you're essentially wanting us to hold. They are. They're entitled to the relief under the old law based on the case of Jimenez-Angeles, which is cited in my opening brief. The facts of that case do not warrant the application of the old law. In that case, the petitioners surrendered to the INS a mere seven days before the statute, which had already become enacted, was to take effect. In this case, the petitioners surrendered to the INS prior to September 30th, 1996, before the new law even was enacted. Well, in reading Urenda, it seemed that the court really didn't focus on the right to relief so much as the timing of the applicability of IRIRA. And at the end, they were trying to say whether Lopez Urenda had distinguished their case from Vasquez Zavala. And they said, no, they didn't really go on all these little details. All they said is the language of Vasquez Zavala is clear. It applies to cases in which petitioners filed asylum applications prior to the effective date. That's correct. And so why wouldn't that be the case here? In both Lopez Urenda and Vasquez Zavala, the cases dealt with the filing of asylum petitions, not suspension for deportation relief. This is a case where my client surrendered in order to receive suspension of deportation relief. The court in Lopez Urenda makes clear that there were no subtle expectations of the suspension of deportation relief because, let's see here. In the Lexis edition of the case, page 14 to 15, Lexis 2003, app Lexis 20221, the petitioner had no subtle expectation that he would be placed in deportation proceedings because, assuming he filed his asylum application in good faith, he had no expectation that INS would deny the application. We don't have that situation here. Mike, the petitioners proceeded to surrender to the INS prior to the enactment of the IIRIRA in order to receive the suspension of deportation relief. What was the basis upon which you claim they were entitled to suspension of deportation? Because they are – well, they are entitled to the opportunity to obtain it. They're not entitled to the relief that's discretionary. Well, that's the problem I have with your case, counsel. It seems to me that there is no vested right that's being denied under the circumstances, even with the retroactive application of a right. Well, even in the case, the leading case that – of St. Sire, that case involved a situation where the relief was discretionary, and the court wasn't concerned over the fact that the relief was discretionary that the petitioner was seeking. Well, under the old law, relief is discretionary, isn't it? It is discretionary. Under the new law, it's – You're not showing that even under the old law, a discretionary relief would have been afforded. Well – They were eligible to ask for it, all of them. Yes. Now the eligibility is only for one of them. Yes. And the requirements are much stiffer as far as showing is concerned. Yes. Exceptional – I don't remember what the words were, but somewhat in the nature of exceptional circumstances. Right. The period of time to be in the country is longer, and the other difference is that the hardship exception does not apply to the applicants themselves. It has to apply to a U.S. citizen. So the relief is very different. But the fact that both of them are discretionary doesn't mean that the statute can't be impermissibly, retroactively applied in this case, as the case in St. Sire points out. That case also involved discretionary relief. All right, counsel, why don't we let the government respond, and then you can retain the rest of the time for a response to the government. Thank you. Thank you. May it please the Court, I'm Susan Houser, appearing for the Attorney General. The cases of Jimenez-Angeles and Lopez-Urrenda taken together are dispositive of this case. Could you voice up, please? Yes, Your Honor. You can speak louder than that, I know. I know you've been yelling at somebody this morning. The cases of Jimenez-Angeles and Lopez-Urrenda taken together are dispositive of this case. The petitioner tries to say that Lopez-Urrenda can be distinguished because the aliens in that case were not eligible for suspension at the time that they made themselves known to the INS. However, in Jimenez-Angeles, that woman was eligible for a suspension of deportation at the time she presented herself to the INS, and the Court held in that case that that matter made no difference. That is, the citation for that is 291F3D594 at 597. You cited it in your brief, did you not? We cite Jimenez-Angeles in the brief. It states, Jimenez-Angeles had been continuously present in the country for seven years as of March 6, 1997. In March 1997, after she reached the seven-year residency mark, she presented herself to the INS. So the petitioner's way of distinguishing Lopez-Urrenda has been taken away by Jimenez-Angeles. Now, the way he tried to distinguish Jimenez-Angeles was that in that case she had only presented herself to the INS, I believe it was three weeks or possibly a month before IRERA's effective date, whereas in his case he claims that his clients presented themselves to the INS in September 1996, seven or eight months before the IRERA effective date. Well, actually, a distinction is that that was actually before the passage of the law. Doesn't that make a difference here? I think he was arguing both that the eight months was significant and the fact that it was before the IRERA effective date. However, the immigration judge merely referred to September 1996. IRERA became effective on or IRERA was enacted on September 30, 1996. And if you look at the actual record, the earliest date they could possibly have been claiming for having made themselves known to the INS was September 30, 1996. So it's by no means clear from the record. Why is that? Excuse me? Why is it September 30th? September 30th was the date of enactment of IRERA. Right, but I thought they said sometime before that they presented themselves. They thought they would be eligible. They didn't know that there was going to be a new law passed within days, which is different than Jimenez Angeles, who the law gets passed, it's not effective, and then puts in the application. Well, I'd like to make two comments about that, Your Honor. First, although they claim in their brief that they did present themselves to the INS before IRERA was enacted, the record doesn't support that. The record, at best, shows that they presented themselves on September 30th, which was the actual enactment date of IRERA. And more importantly, in Lopez-Urrenda, the court very clearly stated that that was not the factor that was dispositive. The factor that is dispositive is that they had not given up anything in an exchange with the government, as happened in St. Cyr, where the alien pled guilty. And as the court noted, in Jimenez Angeles, in that case, the petitioner gave up several constitutional rights in an exchange by pleading guilty. And it was this actual guilty plea to a criminal charge that constituted the reliance interest. In Jimenez Angeles, the court made it very clear that when an alien presents themselves to the INS and they're here illegally, the only thing they give up is their right to remain in the country illegally. And the court looked at that in detail in both Jimenez Angeles and in Lopez-Urrenda. And they looked at whether INS gave up anything in terms of constitutorial resources and other questions of that nature, and they found that there's simply no interest to the guilty plea. Would you address the motion to reopen and our jurisdiction and point us to what, in your view, resolves whether you need one or two petitions for review? Yes, Your Honor. Petitioners also claim that the court has jurisdiction to review their claim that the BIA have used its discretion in denying reopening on the grounds that they had failed to leave during the time that they were permitted under voluntary departure. And the statute that requires that they lose this ability for relief for failing to voluntarily depart is 1252A2B. 8 U.S.C. 1252A2B. The court does not have jurisdiction over that claim because they did not appeal the denial of reopening. The Supreme Court in Stone v. INS, 514 U.S. 386, held that the statute, quote, contemplates two petitions for review. And the court, Stone was a pre-IRERA case, but the court cited the old INA jurisdiction. And that same provision was carried forward by IRERA, and it's now codified for removal proceedings at 8 U.S.C. 1252B6. Stone was cited in 1995, so Congress was presumed to be aware of it when it enacted IRERA in 1996. And not only did Stone not do, or not only did Congress not do anything to change the holding of Stone, even though it was on notice, that the Supreme Court regarded him as two separate petitions for review. Counsel cites our Socop-Gonzalez case, the in-bank case. What's your response on Tolley? Well, that's really a completely different situation because Socop-Gonzalez involved a tolling for, a tolling of the actual date to file the motion to reopen. Now, in this case, it looks as though they didn't receive delivery of the BIA decision until, it looks as though their filing the motion to reopen probably was timely. And we're not contesting, I'm not here arguing today that their actual filing of the motion to reopen was untimely. But I thought you just said that they never did file. No, I'm talking about filing the motion to reopen with the BIA. Right. What I'm arguing is that they never did file, when the BIA issued their decision denying reopening, that was in October. And that was after they filed in this Court in August for review of the underlying BIA decision. Now, their argument is that because they filed their petition for review in August, that it's somehow the same case. And that their one petition for review that they filed in August carries over to their second BIA decision, which was issued in August. And that's what Stone says is not the case, because Stone very clearly holds that these require two different petitions for review. The statute at 1252b-6 specifically refers to two different petitions for review, because it provides that when both the underlying decision and the motion to reopen and reconsider are appealed, then the courts will consolidate them. That's the exact same... I take your position as the motion to reopen is not before us. We don't have jurisdiction because there was no appeal. Did I read somewhere, or is there a case somewhere, or is it just in my head, that the denial of a motion to reopen is purely discretionary, and it is not an appealable order? It's reviewed by this Court for abuse of discretion. It is reviewable. It is reviewable as an abuse of discretion. We haven't addressed whether it has any merit or anything. Your position is not reviewable. No jurisdiction. We decide that it's part of the same case. I suppose we'd have to send it back. For the BIA. For the administrative agency to decide whether there's any merit to the motion to reopen. Well, there's some additional complication here, and this wasn't raised by either party, so I haven't researched it in any depth. But the BIA decision was based on their failure to voluntarily depart, and there is a specific provision in the law that there's no judicial review of the BIA's decision as to voluntary departure. That's a discretionary decision, and it's not reviewable by the Court. But the twist here would be they couldn't voluntarily depart if they didn't have notice, right? If it were interpreted as a due process claim having to do with voluntary departure, that might make some difference. Again, I hesitate to go into this because it hasn't been argued by the other side, and it hasn't been briefed, and I haven't researched it. I would think that if the Court decided it wanted to do that, supplemental briefing might be in order. Thank you, counsel. Your time has expired. Mr. Hamilton, you have some time. Let me just close by saying the legislator's decision to postpone the effective date of the IIRIRA by six months reflects a sensitivity and appreciation of the fact that aliens who are not lawfully entered in the United States are induced to surrender to the INS when relief under the law is available to them. Counsel, do you want to respond to Ms. Houser's point about the fact that the IIRRA is not in the United States? Well, I would respond that the Court, if Stone does contemplate two petitions for review, the Court could certainly consider the first petition as a premature petition on both cases, because I think what can happen is when a petition for review or notice of appeal is filed prematurely, courts tend to allow for jurisdiction in those cases. And I don't think that the record is at all upset over the fact that a second petition for review was filed, considering the first petition for review was filed before the motion to reopen was even decided. So it seems like... Is there a second petition or is there a second notice of appeal? There was no second petition for review filed. See, the problem would be if you didn't file the first one and you called it premature, then we wouldn't have authority to review that final decision, would we? I think the first petition for review is timely as to the BIA decision on the merits, on the IJ's decision. The second issue brought up in the brief of the petitioners relates to the motion to reopen. A second petition for review was not filed for that. Prior to the BIA making a decision on the motion to reopen, this Court already had jurisdiction on the case, because the petition for review had already been filed timely for the case in chief, we should say. If I could also just quickly indicate that I don't think the Court should be concerned overly that the Mendoza family did not strike a bargain with the government, as did the petitioner in INS v. St. Sire, because what the Court instructs us to consider, the St. Sire Court, is whether a statute has a retroactive effect on a party, we are to consider familiar considerations of fair notice, reasonable reliance, and settled expectations. It's not the bargain itself that is dispositive. That's just a factor in the overarching principles of impermissible retroactivity. Thank you, Counsel.
judges: Bright , O'scannlain, McKeown